1
2
3
4                          UNITED STATES DISTRICT COURT
5                         NORTHERN DISTRICT OF CALIFORNIA
6
7    TAYLON JEROME ORR,                        Case No.  11-cv-04923-JST (PR)
            Petitioner,
8
         v.                                    **ORDER DENYING PETITION FOR**
9                                              **WRIT OF HABEAS CORPUS;**
     JAMES A. YATES, Warden,                   **DENYING CERTIFICATE OF**
10                                             **APPEALABILITY**
            Respondent.
11
12
13         Before the Court is the above-titled petition for a writ of habeas corpus, filed pursuant to

14   28 U.S.C. § 2254 by petitioner, Taylon Jerome Orr, challenging the validity of a judgment

15   obtained against him in state court.  Respondent has filed an answer to the petition.  Petitioner has

16   filed a traverse.

17                              **I.  PROCEDURAL HISTORY**

18         On December 12, 2007, a Santa Clara County jury found petitioner guilty of one count of

19   first degree burlary and one count of receiving stolen property.  (Ex. A at 388-91.)  Petitioner

20   admitted the prior conviction allegations.  (Id. at 393.)  On March 28, 2008, the trial court

21   sentenced petitioner to a term of sixty years to life.  (Id. at 494-96.)

22         Petitioner directly appealed the judgment in the California Court of Appeal.  On June 25,

23   2009, in a reasoned opinion, the California Court of Appeal affirmed the judgment.  (Ex. F.)  On

24   September 11, 2009, the California Supreme Court summarily denied the petition for review.  (Ex.

25   H.)  On May 5, 2010, petitioner filed a state petition for writ of habeas corpus in the California

26   Supreme Court.  (Ex. I.)  On November 23, 2010, the California Supreme Court denied the

27   petition.  (Ex. J.)  Petitioner thereafter filed two more unsuccessful petitions to the California

28   Supreme Court.  The instant petition was filed on October 5, 2011.

United States District Court
Northern District of California

## II.  STATEMENT OF FACTS

The following background facts describing the crime and evidence presented at trial are from the opinion of the California Court of Appeal:[1]

Simon Mai went out to dinner with his wife the evening of September 2, 2006.  Before he left, he put their Chihuahua outside.  When they returned, entering through the garage, the dog was inside the house.  A sofa was blocking the front door and the sliding glass door and metal security gate to the backyard were open with the lock damaged.  His television, a camera, a notebook computer, a blanket, and some cash were missing and drawers and jewelry boxes were open.

San Jose Police Officer Michael Chan responded to Mai's 911 call.  Checking for latent fingerprints, he could see a partial hand print on the glass top of the table that held the television.  Using fingerprint powder, a fingerprint brush, and tape he lifted a partial hand print.  A fingerprint expert testified that appellant's palm print matched this print.  She said that two other fingerprint examiners had come to the same conclusion.  She also testified that it was impossible to determine the age of the print from the image that she had received.

Ina Wurth testified that she was gone from her home from 2:00 p.m. until about 9:00 p.m. on January 4, 2007.  When she arrived home, she found that the inside chain was in place preventing her from entering her front door.  She called the police and stuck her hand around the door to remove the chain.  When she entered, she noticed "The blinds were askew and cold air."  The window next to her sliding glass door was broken.  Her laptop computer was missing, as well as a lock box, jewelry boxes, an "itty-bitty white book light," and two pillow cases.  A friend's backpack containing a laptop computer, some charger cables, and wrist guard were also missing.  Wurth prepared a very detailed inventory of the missing items from records that she had kept.

Kim Sheffield left home with his wife around 2:00 p.m. January 6, 2007.  Returning home around 6:00 p.m., they found the back sliding door and bedroom window wide open.  Missing were two laptop computers, jewelry, a digital camera, a photo printer, a cell phone, an iPod, and a pillow case.

On January 15, 2007, a San Jose police officer saw appellant leaning into the back door of his Jeep Cherokee.  Knowing that there was an outstanding arrest warrant for appellant, the officer arrested him.  Inside the Jeep, the police found Sheffield's cell phone and Wurth's friend's laptop computer, as well as a video camera, two more cell phones, and another laptop computer.  Police officers with a search warrant came to appellant's home June 12, 2007.  In the home, they found a book light, a pillow case, and a wrist guard similar to those taken from Wurth's home.  A copy of the list of stolen property that Wurth had prepared was in the living room.  They also found a photo printer similar to that taken from

---

[1] This summary is presumed correct.  <u>Hernandez v. Small</u>, 282 F.3d 1132, 1135 n.1 (9th Cir. 2002); 28 U.S.C. § 2254(e)(1).

United States District Court
Northern District of California

the Sheffield's home.

Appellant presented an alibi defense to the Mai burglary charge. Sixteen-year-old Jennavee Simon testified that appellant was her aunt Stacey Robinson's boyfriend. She remembered September 2, 2006, because she was a cheerleader at a football game in Morgan Hill that day. Appellant and Stacey Robinson took her to the game, arriving around 3:00 p.m. She saw appellant in the stands during the game. Simon remembered that her aunt got into an altercation with Vanessa Reyes during the game. Afterwards, appellant, Stacey Robinson, and she went to Mountain Mike's Pizza. They were at Mountain Mike's from around 7:00 p.m. until 8:45 when appellant and Stacey Robinson dropped her and her cousins off at her mother's house.

Simon testified that when an investigator called her on June 25, 2007, she remembered "right off the top of [her] head," without consulting a calendar, that she was with appellant and Stacey Robinson on the night of September 2, 2006, at the Morgan Hill game. She was unable to remember the dates of other games.

Linda Robinson testified that on September 2, 2006 she awoke with an asthma attack. She called her daughter, Stacey Robinson, to ask her to take Simon and some other cheerleaders to the game. Appellant and Stacey Robinson came and picked up the children and returned them around 9:00 p.m. that night.

Kristen "Keri" Solorio testified that she coached Pop Warner cheerleading and that she knew appellant because his girlfriend was the mother of one of her cheerleaders. She remembered the game on September 2 because there was "an altercation on the field" between Stacy Robinson and Vanessa Reyes. She remembered seeing appellant "trying to get [Stacey] to back off."

Kathy Robinson testified that she was the president of Oak Grove Youth Football and head coach of two cheerleading teams. She remembered September 2, 2006, because Stacey Robinson and Vanessa Reyes "got into an altercation, verbal altercation, yelling and screaming at one another." She asked appellant to take Stacey away a little after 5:00 p.m. After the game, she went to Mountain Mike's Pizza parlor. On the way there, she witnessed a traffic accident between a white van and a green car on Blossom Hill. When she arrived at Mountain Mike's, there was much discussion of this accident. Robinson testified that she remembered seeing appellant at Mountain Mike's around 7:30 p.m. She thanked him for helping out earlier. She remembered him staying for the entire time that the group was there, which was until around 9:30 p.m. Although she testified that Linda Robinson was sick that day, she may have told an investigator that Robinson had been present at dinner.

The prosecutor called as a rebuttal witness a San Jose Police Officer who testified that he was called to investigate a traffic accident on Blossom Hill on September 24, 2006, around 6:45 p.m., between a silver Honda Civic and a white Toyota Sequoia.

People v. Orr, No. H032806, 2009 WL 1816665, *1-2 (Cal. Ct. App. June 25, 2009).

3

# III. DISCUSSION

A.    Standard of Review

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Additionally, habeas relief is warranted only if the constitutional error at issue had a "substantial and injurious effect or influence in determining the jury's verdict." Penry v. Johnson, 532 U.S. 782, 795 (2001) (internal citation omitted).

A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Williams, 529 U.S. at 405-06. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence. "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions

4

as of the time of the relevant state-court decision." <u>Williams</u>, 529 U.S. at 412. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." <u>Mitchell v. Esparza</u>, 540 U.S. 12, 17 (2003).

B.    <u>Petitioner's Claims</u>

As grounds for habeas relief, petitioner claims that: (1) the trial court improperly admitted evidence of petitioner's prior arrests; (2) the trial court improperly admitted propensity evidence; (3) there was insufficient evidence to support petitioner's burglary conviction; (4) the prosecutor committed misconduct; (5) counsel rendered ineffective assistance by: (a) failing to object to the disposition evidence, and by admitting petitioner's guilt of receiving stolen property; (b) failing to object to evidence of petitioner's palm-print or retain an expert; and (c) failing to raise jury instruction errors; and (6) cumulative error denied petitioner a fair trial.[2]  The Court addresses each claim in turn.

1.    <u>Admission of Disposition Evidence</u>

Petitioner claims that the admission of evidence that petitioner had prior arrests was prejudicial because it invited the jury to presume that petitioner was guilty based on the fact that he had previously been arrested.

a.    <u>Background</u>

The Court of Appeal considered and rejected this claim as follows:

**Appellant's Prior Arrests**

Appellant contends, "The admission of evidence Orr had prior arrests which were part of criminal justice records was prejudicial error since it invited the jury to find him guilty based on disposition evidence."

The information filed charged appellant with three counts of residential burglary and one count of receiving stolen property.  The information also alleged that appellant had two prior strike convictions, two prior serious felony convictions, and two prison prior convictions.  (Pen.Code, §§ 667, subds.(b)-(i), 1170.12, 667, subd.(a), 667.5, subd. (b).)  Appellant had convictions for burglary, robbery, assault on a police officer, and discharging a firearm.  Defense counsel asked the court to

---

[2] As a matter of efficiency, the Court has re-numbered and rearranged petitioner's claims.

bifurcate the trial on the prior conviction allegations. Counsel also moved before trial to exclude any evidence of prior bad acts, specific uncharged conduct, or evidence of the convictions. The trial court granted these motions, saying, "Unless it's brought to my attention first, there will be no mention of any type of character evidence. . . ."

The prosecution called Genevieve Rodriguez to testify as a fingerprint expert. The prosecutor asked Rodriguez to describe how the Automated Fingerprint Identification System (AFIS) identified candidates as potential fingerprint matches. She explained that the latent print that the police want matched is scanned to determine points of identification. That print information is then entered into the AFIS for comparison with prints stored there. The prosecutor asked, "so then are all of the fingerprint items that the San Jose Police Department has, are they all in this machine as well, the known files?" Rodriguez answered "yes" and said that there were "Hundreds of thousands of prints in there." Rodriguez testified that when the latent print from the Mai burglary was entered into the AFIS for comparison, a list was generated. The prosecutor asked, "who was the first person listed on that list?" Rodriguez answered, "We have what we call personal file numbers. They are called PFN numbers. So the first time you are arrested in the county, you are assigned a PFN number, or personal file number. So that's what our fingerprint cards are filed under. . . . Also, if you are arrested, you're [given] a booking number or CEN number, which is a CJIC event number. So for whatever you're arrested for, you get a particular arrest number. [¶] So under your personal file number, you may have one arrest, two arrests, three arrests. It's just another number for every time you get arrested . . . ." The prosecutor asked two more questions about the difference between a PFN, which is "the same for an individual, even if that individual used a different name at different times when they were arrested" and the CEN number, which "would be different for every single arrest." Asking about the result list from the entry of the latent print information into the AFIS, the prosecutor asked, "what was the PFN number that was in the number one slot?" Defense counsel objected on relevance grounds and the objection was overruled. Rodriguez went on to testify, after another overruled relevance objection and an unreported sidebar conference, that appellant's PFN number appeared twice on the list, associated with two names, Tyne Rogers and Taylon Orr. [FN1]

> FN1. The trial court said, "Specifically, this is relevant for foundational purposes."

Rodriguez then went on to testify that she compared the latent print from the Mai burglary to the prints on appellant's cards and that "Tyne Rogers/Taylon Orr [was] the person who left that print." She said that two other fingerprint examiners had reached the same conclusion. She also testified that she compared the prints taken of appellant when he was arrested in this case to the "print cards that [she] used to identify the person who left the latent print" and that they matched.

In closing argument, the prosecutor compared the AFIS to the search engine Google. She said that AFIS does not keep the records by name because "somebody

who is being arrested could give any name." She said, "In this case, the first two entries on that list were for CEN number CNL989, person with the date of birth 8/15/70. There were two names that had been used by this person in prior arrests; Tyne Roger [sic] and Taylon Orr."

Appellant contends that the trial court erred in admitting evidence over counsel's relevance objections. [FN2] He argues that, "In this manner, the prosecutor successfully disclosed to the jury that Orr had prior criminal arrests, even though the court had excluded such evidence."

> FN2. Respondent contends that "the present claim is barred by trial counsel's failure to interpose a timely objection to the disputed testimony." However, trial counsel moved before trial to exclude such evidence and the court ruled that such evidence could not be admitted without first bringing it to the court's attention. When the prosecutor elicited this testimony, defense counsel objected that evidence about appellant's PFN numbers based on prior arrests was irrelevant. We therefore address this issue on the merits.

"Evidence that involves crimes other than those for which a defendant is being tried is admitted only with caution, as there is the serious danger that the jury will conclude that defendant has a criminal disposition and thus probably committed the presently charged offense. [Citations.]" (People v. Thompson (1988) 45 Cal.3d 86, 109.) In People v. Stinson (1963) 214 Cal. App. 2d 476, the defendant was convicted of second degree burglary. The defendant and another individual had been stopped driving a vehicle which contained items stolen from the room of a motel. During cross-examination, a police officer gave a non-responsive answer to a question which referred to the defendant's status as a parolee. The defense counsel requested that the answer be stricken and moved for a mistrial. The motion for a mistrial was denied. The appellate court first noted that the reference to the defendant's status as a parolee carried "the inevitable implication of a prior criminal record." (Id. at p. 481.) It further noted "the possible tendency on the part of some jurors to convict a defendant not on proof that he committed the offense but because he has a criminal past." (Id. at p. 480.) The court concluded that the reference to the defendant's parole status was reversible error. The court also noted that its conclusions were the same regardless of whether the witness's reference to the defendant's parole status was an accident or intentional. Other references to a defendant's criminal past have also been found to be prejudicial. In People v. Ozuna (1963) 213 Cal. App. 2d 338, 342, the court found reversible error when the defendant was referred to as an "ex-convict." In People v. Figuieredo (1955) 130 Cal. App. 2d 498, 505-506, the court found reversible error when a witness stated that the defendant "did time."

Respondent argues that "the fingerprint expert merely described the process by which the Automated Fingerprint Identification System identified appellant. This was not improper evidence of criminal disposition." Respondent relies on People v. Farnam (2002) 28 Cal.4th 107. In Farnum, the defendant argued that the fingerprint expert's testimony "that felons convicted of homicide, rape, robbery, and burglary were among those included in the database in effect disclosed his

7

prior felon status to the jury and implied he had been previously convicted of those particular crimes." (Id. at p. 161.) The Supreme Court upheld the admission of this testimony, because the expert "made no mention of past crimes defendant committed or was alleged to have committed." (Ibid.) Farnum is distinguishable from this case because here the expert testified that the database was composed entirely of arrestees' fingerprints, where in Farnum, the expert made clear "that the database also included nonfelons such as job applicants who required background clearance." (Ibid.)

The original source of appellant's fingerprints which were compared to the latent palm print from the Mai burglary, and the fact that appellant had used a different name in one of the prior arrests, were irrelevant to the issues in this trial and should have been excluded. [FN3] Ultimately, here, the question is whether it is reasonably probable that the jury would have reached a result more favorable to appellant had it not heard evidence of appellant's prior arrests. (People v. Watson (1956) 46 Cal.2d 818, 836.) "There is a reasonable probability of a more favorable result within the meaning of Watson when there exists 'at least such an equal balance of reasonable probabilities as to leave the court in serious doubt as to whether the error affected the result.' [Citation.]" (People v. Mower (2002) 28 Cal.4th 457, 484.)

> FN3.  Appellant argues that because the trial court bifurcated the trial on the prior conviction allegations, granted defense counsel's pre-trial motion to exclude any evidence of prior bad acts, specific uncharged conduct, or evidence of the convictions, and said that "any type of character evidence" should be brought to the court's attention before being mentioned, "the circumstances suggest the disclosure of this evidence was calculated."

Such an equal balance of reasonable probabilities is not present here. The evidence which should have been excluded was concerning prior arrests. It did not inform the jury that appellant had been convicted of any offense, was on probation or parole, or had served a sentence. Appellant was convicted of the burglary count for which there was fingerprint evidence. The California Supreme Court has repeatedly emphasized that fingerprints are the strongest evidence of identity and ordinarily are sufficient by themselves to identify the perpetrator of the crime. [FN4] (People v. Figueroa (1992) 2 Cal. App. 4th 1584, 1587-1588.) Considerable doubt was cast on the accuracy of appellant's alibi witnesses' recall of the date of the event about which they testified. The evidence on the receiving stolen property count was very strong. However, despite appellant's possession of numerous items of stolen property, some of which had been taken in burglaries that had occurred within days of his arrest, the jury acquitted him of two residential burglary counts. This was a great success for the defense and indicates that the admission of the evidence of appellant's prior arrests did not prejudice the jury against appellant. It is not reasonably probable that the jury would have reached a result more favorable to appellant had it not heard evidence of appellant's prior arrests.

> FN4.  But see Koehler, Fingerprint Error Rates and Proficiency Tests: What They Are and Why They Matter (2008) 59 Hastings L.J. 1077.

United States District Court
Northern District of California

1    Orr, 2009 WL 1816665 at *2-5.

2               b.      Analysis

3          A state court's evidentiary ruling is not subject to federal habeas review unless the ruling

4    violates federal law, either by infringing upon a specific federal constitutional or statutory

5    provision or by depriving the defendant of the fair trial guaranteed by due process.  Pulley v.

6    Harris, 465 U.S. 37, 41 (1984); Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991).

7    Failure to comply with state rules of evidence is neither a necessary nor a sufficient basis for

8    granting federal habeas relief on due process grounds.  Henry v. Kernan, 197 F.3d 1021, 1031 (9th

9    Cir. 1999); Jammal, 926 F.2d at 919.  While adherence to state evidentiary rules suggests that the

10   trial was conducted in a procedurally fair manner, it is certainly possible to have a fair trial even

11   when state standards are violated.  Perry v. Rushen, 713 F.2d 1447, 1453 (9th Cir. 1983).  The

12   due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or

13   so prejudicial that it rendered the trial fundamentally unfair.  Walters v. Maass, 45 F.3d 1355,

14   1357 (9th Cir. 1995).  But only if there are no permissible inferences that the jury may draw from

15   the evidence can its admission violate due process.  See Jammal, 926 F.2d at 920.

16         As an initial matter, respondent correctly points out that petitioner does not state a federal

17   claim.  Petitioner neither cites to federal law nor alleges that his claim violates a federal

18   constitutional guarantee.  The Supreme Court has repeatedly held that federal habeas relief is

19   unavailable for violations of state law or for alleged error in the interpretation or application of

20   state law.  See Swarthout v. Cooke, 131 S. Ct. 859, 861-62 (2011).  In other words, "it is only

21   noncompliance with federal law that renders a State's criminal judgment susceptible to collateral

22   attack in the federal courts."  Wilson v. Corcoran, 131 S. Ct. 13, 16 (2010) (emphasis in original).

23   Thus, because petitioner did not explicitly claim that any federal constitutional right was violated,

24   petitioner is not entitled to federal habeas relief on this claim.

25         Even assuming that petitioner properly alleged a violation of his federal right to due

26   process, the state court's rejection of it was not contrary to, or an unreasonable application of,

27   clearly established Supreme Court law.  That is, the Supreme Court "has not yet made a clear

28   ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process

9

1   violation sufficient to warrant issuance of the writ." Holley v. Yarborough, 568 F.3d 1091, 1101

2   (9th Cir. 2009) (finding that trial court's admission of irrelevant pornographic materials was

3   "fundamentally unfair" under Ninth Circuit precedent but not contrary to, or an unreasonable

4   application of, clearly established Federal law under § 2254(d)).

5       Moreover, the California Court of Appeal determined that the admission that petitioner had

6   suffered prior arrests was not prejudicial.  Indeed, the Court of Appeal reasoned that petitioner was

7   acquitted of two out of the three burglary charges, and was only convicted of the burglary charge

8   in which petitioner's fingerprints were identified.  Further, petitioner was convicted of the charge

9   of receiving stolen property after the jury heard evidence that such property was found in

10  petitioner's possession.  Thus, even if the testimony that petitioner had suffered prior arrests were

11  excluded, it did not have a substantial or injurious effect on the jury's verdict.  See Brecht v.

12  Abrahamson, 507 U.S. 619, 637 (1993).

13      2.   Admission of Propensity Evidence

14      Relatedly, petitioner also claims that the admission of evidence that petitioner had prior

15  arrests violated his federal right to due process because it was irrelevant, prejudicial, and implied

16  that petitioner had a criminal propensity.  As the Court stated above, the question is whether the

17  admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally

18  unfair.  Walters, 45 F.3d at 1357.  For the reasons already stated, the answer is no.  Moreover,

19  even if the admission was constitutionally erroneous, for the reasons stated above, it did not have a

20  substantial or injurious effect on the jury.  The state court's rejection of this claim was not contrary

21  to, or an unreasonable application of, clearly established Supreme Court law.  See 28 U.S.C §

22  2254(d); Holley v. Yarborough, 568 F.3d at 1101.

23      3.   Sufficiency of the Evidence

24      Petitioner claims the trial court violated his right to due process because there was

25  insufficient evidence to find him guilty of the burglary of Simon Mai's house.  Petitioner appears

26  to argue that because defense witnesses testified that petitioner was at a football game in Morgan

27  Hill the night of the burglary, the evidence regarding the specific location of petitioner's palm

28

United States District Court
Northern District of California

print was conflicting, and the police failed to preserve or photograph the latent palm print, the evidence was not sufficient to convict him of burglary.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992); see, e.g., Coleman v. Johnson, 132 S. Ct. 2060, 2065 (2012) (per curiam) ("the only question under Jackson [v. Virginia] is whether [the jury's finding of guilt] was so insupportable as to fall below the threshold of bare rationality"). Rather, the federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Payne, 982 F.2d at 338 (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, has there been a due process violation. Id. at 324. If confronted by a record that supports conflicting inferences, a federal habeas court "must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326.

Petitioner's argument is nothing more than an attempt to persuade this Court that his version of the facts is the more believable. Based on the palm print identified as belonging to petitioner by three different fingerprint experts, and discovered on a television stand inside Simon Mai's residence, and testimony of other witnesses, any rational trier of fact could have found that petitioner entered a dwelling belonging to Simon Mai without Simon Mai's permission with the intent to commit a crime beyond a reasonable doubt. See Payne, 982 F.2d at 338; see, e.g., Taylor v. Stainer, 31 F.3d 907, 910 (9th Cir. 1994) (three hypotheses regarding petitioner's fingerprints which government failed to rebut were unsupported by evidence and therefore insufficient to invalidate conviction).

Petitioner is not entitled to federal habeas relief on this claim.

United States District Court
Northern District of California

1

### 4.      Prosecutorial Misconduct

Petitioner claims that the prosecution failed to collect and preserve physical evidence showing where petitioner's palm print was found.  Petitioner also alleges that the prosecutor improperly vouched for a witness by telling the jury that petitioner's palm print was found on the glass table.

As an initial matter, the parties appear to analyze this claim under Brady v. Maryland, 373 U.S. 83 (1963).  Brady applies when the prosecution suppresses evidence favorable to an accused and that evidence is material either to guilt or punishment.  Id. at 87.  In order to succeed on a Brady claim, a petitioner must show: (1) that the evidence at issue is favorable to the accused, either because it is exculpatory or impeaching; (2) that it was suppressed by the prosecution, either willfully or inadvertently; and (3) that it was material (or, put differently, that prejudice ensued).  Banks v. Dretke, 540 U.S. 668, 691 (2004).   Evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  Cone v. Bell, 556 U.S. 449, 469-70 (2009).  Here, Officer Chan testified that he lifted a partial hand print from the glass top of the television stand.  Petitioner disputes that there was "proof" that Officer Chan did so.  This argument is insufficient to state a Brady claim because Petitioner fails to identify any *suppressed* evidence that was favorable or material.

Petitioner's argument is more accurately characterized as alleging a failure to preserve potentially useful evidence.  Illinois v. Fisher, 540 U.S. 544, 547-48 (2004).  To the extent petitioner is arguing that the prosecution had a duty to preserve or collect a photograph of the table top where petitioner's palm print was lifted, petitioner must demonstrate bad faith conduct by the police in failing to preserve potentially useful evidence.  Id. at 547-48.  A constitutional violation will be found only if a showing is made that (1) the government acted in bad faith, the presence or absence of which turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed, and (2) that the missing evidence is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."  Id. (internal quotation and citation omitted).  See, e.g., id. at 547-48 (no bad faith failure to preserve substance seized from defendant which had been tested four times and determined to

12

be cocaine – the substance was only potentially useful evidence because defendant at most could hope that he could conduct another test that might show the substance to not be cocaine); United States v. Estrada, 453 F.3d 1208, 1212-13 (9th Cir. 2006) (no bad faith in part because there was no evidence of "malicious intent" by government); United States v. Booth, 309 F.3d 566 at 574 (9th Cir. 2002) (no bad faith failure to preserve where government did not take possession of computer hard drives but only informed third party vendor (who later erased them) that it did not need copies of the information on the hard drives and where there was nothing about the hard drives that would have made their allegedly exculpatory nature apparent to the government). Here, there was no evidence that Officer Chan knew that photographing the location of the found palm print could have had any potential exculpatory value, or that the failure to obtain such information was not available by other means. Indeed, Officer Chan plainly testified that he found the print on the glass table. Petitioner thus cannot demonstrate either factor necessary to show a violation under Fisher. Fisher, 540 U.S. at 547-48.

Finally, petitioner alleges that the prosecutor improperly vouched for his witness' credibility by telling the jury that petitioner's palm print was found on Simon Mai's table. A prosecutor may not vouch for the credibility of a witness. United States v. Moreland, 604 F.3d 1058, 1066 (9th Cir. 2010); United States v. Lopez, 803 F.2d 969, 973 (9th Cir. 1986) (improper to suggest that witness found credible by the grand jury should therefore be credible to the trial jury). Improper vouching for the credibility of a witness occurs when the prosecutor places the prestige of the government behind the witness or suggests that information not presented to the jury supports the witness' testimony. United States v. Young, 470 U.S. 1, 7 n.3, 11-12 (1985). Here, in contrast, Officer Chan clearly testified in front of the jury that he lifted petitioner's palm print from the glass television stand. (Ex. B at 114.) Thus, the prosecutor's restatement of that testimony during closing argument was not improper vouching and did not violate petitioner's constitutional right to due process.

The state court's rejection of petitioner's prosecutorial misconduct claim was not contrary to, or an unreasonable application of, clearly established Supreme Court law.

5.      Ineffective Assistance of Counsel

Petitioner argues that trial counsel rendered ineffective assistance of counsel by (a) failing to object to the disposition evidence, and by admitting petitioner's guilt of receiving stolen property and (b) failing to object to evidence of petitioner's palm-print or retain an expert. Petitioner also argues that trial and appellate counsel rendered ineffective assistance by failing to raise claims regarding jury instruction errors.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but "effective" assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  In order to prevail on a Sixth Amendment claim based on ineffectiveness of counsel, a petitioner first must establish such counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  Id. at 687-88.  Second, the petitioner must establish prejudice resulting from his counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.

The Strickland framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis.  See Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011).  A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254.  See id. at 1410-11; Harrington v. Richter, 131 S. Ct. 770, 788 (2011) (same).  The general rule of Strickland, i.e., to review a defense counsel's effectiveness with great deference, gives the state courts greater leeway in reasonably applying that rule, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA."  Cheney v. Washington, 614 F.3d 987, 995 (9th Cir. 2010) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  When § 2254(d) applies, "the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Harrington, 131 S. Ct. at 788.

a.  Failing to object to disposition evidence

Petitioner claims that although counsel objected to evidence of petitioner's prior arrests as irrelevant, counsel failed to object on the ground that the evidence was more prejudicial than probative.  In addition, petitioner argues that counsel failed to object to the use of the Automated Fingerprint Identification System ("AFIS") as irrelevant and more prejudicial than probative.

i.  Background

The Court of Appeal considered and rejected this claim as follows:

Appellant contends, "The admission of evidence that a search of a computer database identified appellant as the likely source of the palm print found at the Mai residence should have been excluded since it was irrelevant, and counsel provided ineffective assistance in failing to move to exclude that evidence on relevance grounds prior to the fingerprint expert's testimony."

Before the fingerprint examiner testified, defense counsel asked the trial court to hold an Evidence Code section 402 hearing concerning the reliability of the "AFIS machine." Counsel observed that the AFIS listed 15 possible matches.  He said, "we need to know if there are misattributed identities in the AFIS system potentially among the 15 possible candidates that were not-that were not investigated, to know if there possibly could have been other close matches that could have resulted in a second layer of analysis from a supervising latent print examiner to rule out other people."  Counsel had asked the prosecutor to produce logs concerning the maintenance of the machine.  He said that his investigation had "recently turned up to issues relative to the AFIS machine that were striking to us" and argued, "If this machine is not in proper working order the time it was being used in the examination, then . . . that would be exculpatory."  The prosecutor said that there were no maintenance records available because "any sort of maintenance or anything to this system" is performed by "Motorola engineers who have remote access to this system."

The trial court denied appellant's request for an Evidence Code section 402 hearing saying, "I get the impression that proper foundation will be able to be laid" by Rodriguez in her testimony.  When Rodriguez testified, defense counsel cross-examined her extensively on the AFIS system, causing her to acknowledge that she did not know the "error rate at which it turns up incorrect lists of possible identification matches" and that she was not familiar with a case counsel mentioned by name in which "the AFIS machine mistakenly matched a California man['s] print to a three-time felon."

"In order to demonstrate ineffective assistance, a defendant must first show counsel's performance was deficient because the representation fell below an objective standard of reasonableness under prevailing professional norms. (Strickland v. Washington (1984) 466 U.S. 668, 687-688. . . .)  Second, he must show prejudice flowing from counsel's performance or lack thereof.  Prejudice is

shown when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome.  (<u>In re Avena</u> (1996) 12 Cal.4th 694, 721. . . .)"  (<u>People v. Williams</u> (1997) 16 Cal.4th 153, 215.)

"If 'counsel's omissions resulted from an informed tactical choice within the range of reasonable competence, the conviction must be affirmed.' [Citation.]  When, however, the record sheds no light on why counsel acted or failed to act in the manner challenged, the reviewing court should not speculate as to counsel's reasons.  To engage in such speculations would involve the reviewing court '"in the perilous process of second-guessing."'  [Citation .]  Because the appellate record ordinarily does not show the reasons for defense counsel's actions or omissions, a claim of ineffective assistance of counsel should generally be made in a petition for writ of habeas corpus, rather than on appeal.  [Citation.]"  (<u>People v. Diaz</u> (1992) 3 Cal.4th 495, 557-558.)  If the record on appeal fails to show why counsel acted or failed to act in the instance asserted to be ineffective, unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation, the claim must be rejected on appeal.  (<u>People v. Mendoza Tello</u> (1997) 15 Cal.4th 264, 266-267; <u>People v. Kraft</u> (2000) 23 Cal.4th 978, 1068-1069.)

The failure to object is considered a matter of trial tactics "as to which we will not exercise judicial hindsight.  [Citation.]"  (<u>People v. Kelly</u> (1992) 1 Cal.4th 495, 520.)  We defer to counsel's tactical decisions in examining ineffective assistance claims and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' [Citation]."  (<u>Strickland v. Washington</u>, <u>supra</u>, 466 U.S. 668, 689; <u>People v. Lucas</u> (1995) 12 Cal.4th 415, 436-437.)

The admission of evidence that a search of the AFIS database identified appellant as the likely source of the palm print permitted counsel to challenge, through cross examination, the reliability of that database and the examiner's comparison of only one set from the matches produced by the AFIS.  This line of questioning was designed to cast doubt on the value of the examiner's determination that appellant's prints matched the latent palm print found at the scene of the Mai burglary.  Counsel clearly made a decision to do this, and we cannot say that this was an unreasonable tactical choice.

<u>Orr</u>, 2009 WL 1816665, *6-7.

ii.  <u>Analysis</u>

Applying the state court's analysis, this Court cannot say that the state court's conclusion that counsel made a tactical decision was an unreasonable determination of the facts.  See <u>Edwards v. LaMarque</u>, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc) (recognizing that whether counsel's

16

actions were tactical is a question of fact considered under 28 U.S.C. § 2254(d)(2); whether those

actions were reasonable is a question of law considered under 28 U.S.C. § 2254(d)(1)).  Nor can

this Court say that such a tactical decision to refrain from objecting was objectively unreasonable.

See, e.g., United States v. Gibson, 690 F.2d 697, 703-04 (9th Cir. 1982) (failure to make

evidentiary objections does not render assistance ineffective unless challenged errors can be

shown to have prejudiced the defense).  Moreover, based on this Court's determination in Section

1, supra, even if counsel's failure to object was erroneous, there is no indication that such error

had a substantial or injurious effect on the jury's verdict.

> b.   Conceding that petitioner was guilty of receiving stolen property

Petitioner states that counsel rendered ineffective assistance by conceding in opening

statements that petitioner was guilty of the count of receiving stolen property.

> i.      Background

Appellant contends, "Trial counsel provided ineffective assistance of counsel . . .
by admitting in opening statement Orr was guilty of receiving stolen property."  In
his opening statement, defense counsel said that the police "found some stolen
property on Mr. Orr when they searched his car: laptop, some cell phones.  We
admit that.  This is a receiving stolen property case.  Mr. Orr doesn't necessarily
keep the best company, but the burglary cases, the charges of burglary in this case
are a not guilty.  That's what you're going to find."

In closing argument, the prosecutor noted that "in opening statement, the defense
indicated that they were conceding that count that the defendant did possess stolen
property, and they weren't going to deny that.  Now, attorney statements are not
evidence, but that's what you were told, so this is an undisputed fact."

In defense counsel's closing argument, he discussed some of the property that was
found in appellant's car.  He mentioned the laptop computer and challenged the
prosecution's view that the serial number on it had been obliterated.  He noted that
the owner's business card was still attached to the laptop.  He said that the
prosecution "wants you to believe that Mr. Orr knew that this was stolen
because . . . .  If he possessed it, that means he stole it . . . ."  He said, "Now, I
know -- I know I said this, and I honestly, I don't feel too good about it, you know.
I said at the beginning of this case this is a . . . receiving stolen property case.  I
wish I hadn't of said that because I heard testimony that changes my opinion."

As appellant sees it, "When [defense counsel] attempted to retract his concession, counsel admitted his performance fell below the standard of reasonable conduct by a defense attorney."

It is not ineffective assistance of counsel to admit obvious weaknesses in a defense case.  (People v. Mayfield (1993) 5 Cal.4th 142, 177.)  While "a defense attorney's concession of his client's guilt . . . can constitute ineffectiveness of counsel," there may be times when it would be a reasonable trial tactic to "'adopt[ ] a more realistic approach'" and concede some facts.  (People v. Gurule (2002) 28 Cal.4th 557, 611, 612; People v. Diggs (1986) 177 Cal. App. 3d 958, 970.)  There is a strong presumption that counsel's actions were based on sound trial strategy, even when counsel concedes some degree of guilt.  (People v. Freeman (1994) 8 Cal.4th 450, 498.)  Where evidence of guilt is quite strong, it is understandable that trial counsel, given the weight of incriminating evidence, would not make sweeping declarations of the defendant's innocence but instead would adopt a more realistic approach.  Good trial tactics may depend on complete candor with the jury.  (People v. Gurule, supra, 28 Cal.4th at p. 612.)

Appellant argues, "Since counsel confessed he should not have conceded Orr's guilt in opening statement, the record indicates counsel did not make a reasonable tactical decision."  We disagree.  Under the circumstances, it was a reasonable tactical decision to admit that appellant had received stolen property in that so much of it was found with him in his car and in his home.  In this way, counsel could hope to achieve some credibility with the jury.  We view counsel's remark in closing argument that he wished he had not made the concession as a rhetorical device, rather than an admission of ineffective assistance.  Counsel was making the point that the prosecutor had failed to convincingly prove even that count in order to argue that the rest of the prosecution's case contained even greater weaknesses.  This was a reasonable tactical choice and appellant was acquitted of two counts of residential burglary as a result.

Orr, 2009 WL 1816665, *7-8.

In Florida v. Nixon, 543 U.S. 175 (2004), defense counsel conceded that defendant committed the charged crime of murder during the guilt phase of trial, and decided to concentrate instead on minimizing defendant's punishment during the penalty phase of trial because the evidence of guilt was overwhelming.  The Supreme Court recognized that, "[a] defendant . . . has the ultimate authority to determine whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal.  Concerning those decisions, an attorney must both consult with the defendant and obtain consent to the recommended course of action."  Nixon, 543 U.S. at 187 (quoting Jones v. Barnes, 463 U.S. 745, 751 (1983) (internal quotation marks omitted).  However,

continued the Supreme Court, in <u>Nixon</u>, prejudice is not presumed unless defense counsel "failed to function in any meaningful sense as the Government's adversary." <u>Id.</u> (quoting <u>United States v. Cronic</u>, 466 U.S. 648, 666 (1984)).

Here, it was not objectively unreasonable for the state court to conclude that defense counsel's decision to concede guilt on the count of receiving stolen property during opening statements in order to build credibility with the jury was a tactical strategy. <u>See United States v. Thomas</u>, 417 F.3d 1053, 1058-59 (9th Cir. 2005) ("in some cases a trial attorney may find it advantageous to his client's interests to concede certain elements of an offense or his guilt of one of several charges") (citation omitted); <u>United States v. Holman</u>, 314 F.3d 837, 839 n.1, 840-41 (7th Cir. 2002) (holding that trial counsel's concession of defendant's guilt to one of several charges in order to enhance his credibility in arguing against conviction on other charges is a reasonable trial strategy). Moreover, due to the fact that the stolen property was ultimately found in petitioner's vehicle and house, there is no reasonable probability that the result of the proceeding would have been different had counsel not conceded guilt of receiving stolen property during his opening statement.

c.   <u>Failure to object to palm-print or retain an expert</u>

Petitioner argues that counsel should have moved to exclude the evidence of petitioner's palm-print because there was no photograph of the location from where the palm-print was lifted. Despite petitioner's insistence that Officer Chan testified that the palm-print was found on the left-hand side of the glass television stand and Simon Mai testified that the palm-print was on the front of the glass television stand, petitioner does not explain how this discrepancy would be grounds upon which to exclude evidence of the palm-print. Trial counsel cannot have been ineffective for failing to raise a meritless motion. <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1273 (9th Cir. 2005); <u>see, e.g.</u>, <u>Hebner v. McGrath</u>, 543 F.3d 1133, 1137 (9th Cir. 2008) (finding counsel's failure to object

to admission of defendant's prior sexual misconduct as propensity evidence not ineffective where evidence would have been admitted in any event to show common plan or intent).

Petitioner also claims that counsel should have hired an expert to challenge the authenticity of the palm-print.  Counsel's failure to call an expert witness can be grounds for an ineffective assistance of counsel claim.  See Schell v. Witek, 218 F.3d 1017, 1028-29 (9th Cir. 2000) (counsel failed to solicit fingerprint expert where only evidence against defendant was a fingerprint).  But courts have found that a trial counsel's strategic decision to forgo calling an expert and to instead rely on cross-examination of the prosecution's witness does not render counsel ineffective.  See Wilson v. Henry, 185 F.3d 986, 990 (9th Cir. 1999) (where the evidence does not warrant it, the failure to call an expert does not amount to ineffective assistance of counsel).  And, even if counsel's failure to consult and present expert testimony was unreasonable, petitioner must show that such failure prejudiced his case.  See Richter v. Hickman, 521 F.3rd 1222, 1230-32 (9th Cir. 2008).

Here, defense counsel opted to challenge the reliability of the AFIS database as well as the examiner's methods through cross-examination.  This Court cannot say that counsel's tactic was unreasonable.  In addition, petitioner merely speculates as to the expert testimony that could have been produced, but "[s]peculation about what an expert could have said is not enough to establish prejudice."  Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997).  Accordingly, this Court concludes that the decision of petitioner's counsel to forego calling an expert did not render his assistance ineffective.

d.   Failure of trial and appellate counsel to raise jury instruction errors

Petitioner claims that counsel was ineffective for failing to request:  (a) CALCRIM No. 3400 (Alibi)[3]; (b) instructions on lesser included offenses of burglary; and (c) CALCRIM Nos.

---

[3] CALCRIM No. 3400 provides:  The People must prove that the defendant committed <insert crime[s] charged>.  The defendant contends (he/she) did not commit (this/these) crime[s] and that

20

1751 (Defense to Receiving Stolen Property: Innocent Intent)[4] and 3406 (Mistake of Fact)[5].

Petitioner further claims that appellate counsel was ineffective for failing to raise these omissions

on appeal.

### i.   CALCRIM No. 3400

But for counsel's failure to request CALCRIM No. 3400, the result of the proceeding

would not have been different.  Here, counsel's failure to request the alibi instruction could not

have been prejudicial in light of the facts of the case and the other instructions given to the jury.

With respect to the Mai burglarly conviction, counsel called several witnesses who testified that

petitioner was at a football game in Morgan Hill the night of the burglary.  Additionally, counsel

argued at the close of trial that the prosecution's witnesses should not be believed, and that

petitioner was not present at the scene of the crime.  (Ex. B at 475-86.)  Moreover, the trial court

instructed the jury on how to weigh the credibility of a witness (id. at 434), on the presumption of

petitioner's innocence (id. at 431), and on the prosecution's burden of proving petitioner guilty

beyond a reasonable doubt (id.).  The jury nevertheless determined that there was neither

---

(he/she) was somewhere else when the crime[s] (was/were) committed.  The People must prove
that the defendant was present and committed the crime[s] with which (he/she) is charged.  The
defendant does not need to prove (he/she) was elsewhere at the time of the crime.

If you have a reasonable doubt about whether the defendant was present when the crime
was committed, you must find (him/her) not guilty.

[4] CALCRIM No. 1751 provides:  The defendant is not guilty of receiving (stolen/extorted)
property if (he/she) intended to (return the property to its owner/ [or] deliver the property to law
enforcement) when (he/she) (bought/received/concealed/withheld) the property.

If you have a reasonable doubt about whether the defendant intended to (return the
property to its owner/ [or] deliver the property to law enforcement) when (he/she)
(bought/received/concealed/withheld) the property, you must find (him/her) not guilty of receiving
(stolen/extorted) property.

[5] CALCRIM No. 3406 provides:  The defendant is not guilty of <insert crime[s]> if (he/she) did
not have the intent or mental state required to commit the crime because (he/she) [reasonably] did
not know a fact or [reasonably and] mistakenly believed a fact.

If the defendant's conduct would have been lawful under the facts as (he/she) [reasonably]
believed them to be, (he/she) did not commit <insert crime[s]>.

If you find that the defendant believed that <insert alleged mistaken facts> [and if you find
that belief was reasonable], (he/she) did not have the specific intent or mental state required for
<insert crime[s]>.

If you have a reasonable doubt about whether the defendant had the specific intent or
mental state required for <insert crime[s]>, you must find (him/her) not guilty of (that crime/those
crimes).

exculpatory information nor any evidence that raised a reasonable doubt of petitioner's guilt. Thus, the state court's conclusion that there was no reasonable probability that counsel's failure to request CALCRIM No. 3400 affected the jury's verdict (or that appellate counsel was ineffective for failing to raise such a claim) was not contrary to, or an unreasonable application of, clearly established Supreme Court law.

ii.      Lesser-included offenses

As respondent points out, counsel's decision not to request instructions on lesser-included offenses of burglary was a tactical and reasonable decision. The theory of defense was that petitioner was not present at the time of the burglaries. Requesting an instruction on lesser-included offenses would have been contrary to such a theory.

It cannot be said that counsel's decision did not "reflect[ ] the skill and judgment one would expect of a reasonably competent attorney." Denham v. Deeds, 954 F.2d 1501, 1505 (9th Cir. 1992). Specifically, because either any lesser included instruction of burglary would have been inconsistent with the defense theory of factual innocence, it cannot be said that defense counsel had no rational tactical purpose for deciding not to request such an instruction. Additionally, defense counsel could have made the tactical choice to take an "all or nothing" approach on the greater offense burglary, rather than give the jury the opportunity to convict on the lesser-included offenses. Counsel's presumed strategic decision not to ask for such instruction is bolstered by state law: "when a defendant completely denies complicity in the charged crime, there is no error in failing to instruct on a lesser included offense." People v. Gutierrez, 112 Cal. App. 4th 704, 709 (2003) (citing People v. Medina, 78 Cal. App. 3d 1000, 1005-1006 (1978)). Thus, petitioner has not demonstrated his trial counsel was ineffective in failing to request a lesser-included offense instructions or that appellate counsel was ineffective in failing to so argue.

iii.      CALCRIM Nos. 1751 and 3406

Petitioner argues that counsel should have requested instructions regarding innocent intent and mistake of fact. However, as respondent points out, there was no evidence to support either instruction. Petitioner did not testify, and there was otherwise no evidence before the jury that would have supported what petitioner's state of mind was. Here, petitioner has failed to show that

22

United States District Court
Northern District of California

counsel rendered deficient performance by failing to request such instructions, or that petitioner was prejudiced by such a failure.  Accordingly, petitioner's trial counsel was not ineffective for failing to request instructions that would have been denied.  See Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996) ("the failure to take a futile action can never be deficient performance"). Because a request for either instruction would not have been successful due to the lack of supporting evidence, trial counsel was not ineffective in failing to make such a request. Accordingly, the state court's decision was neither contrary to nor an unreasonable application of clearly established Supreme Court law, nor was it based on an unreasonable determination of the facts.  For the same reasons, petitioner's claim that appellate counsel was ineffective for failing to raise this claim on appeal fails.

       7.     Cumulative Error

Petitioner claims he was prejudiced by the cumulative effect of the foregoing asserted errors.  For the reasons discussed above, the Court has found no constitutional error exists, let alone multiple errors.  As there have been no errors to accumulate, there can be no due process violation based on a theory of "cumulative" error.  See Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002) (holding where there are no errors, there can be no cumulative error).

Accordingly, petitioner is not entitled to habeas relief on this claim.

C.    Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability.  See Rules Governing § 2254 Case, Rule 11(a).  A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Here, petitioner has not made such a showing, and, accordingly, a certificate of appealability will be denied.

23

## IV.  CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is DENIED, and a certificate of appealability is DENIED.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

Dated:  January 28, 2014

_____
JON S. TIGAR
United States District Judge